ACKERMAN DAIRY INC., A NEW JERSEY CORPORATION, ARTHUR CHACANIOS AND JOHN STOKES, PLAINTIFFS, v. ROSCOE P. KANDLE, COMMISSIONER OF THE DEPARTMENT OF HEALTH OF THE STATE OF NEW JERSEY, AND ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.

Argued March 4, 1969—Decided May 19, 1969.

*Mr. Justin P. Walder* argued the cause for plaintiffs (*Messrs. Schapira, Steiner & Walder,* attorneys; *Mr. Jeffrey Barton Cahn* on the brief).

*Mr. Joseph A. Hoffman,* Assistant Attorney General, argued the cause for defendants (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Deputy Attorney General, of counsel; *Mr. Herbert K. Glickman,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

HANEMAN, J. On June 14, 1968 plaintiffs filed a two-count complaint in the Superior Court, seeking to enjoin the enforcement of the "Milk Dating Law." *N. J. S. A.* 24:10–57.23. The first count alleged that the statute had been passed by the State Senate in a manner contrary to the *New Jersey Constitution* and contrary to common law.

The second count raised various constitutional objections to the substance of the statute.

The Court determined it lacked jurisdiction of the first count, see *N. J. S. A.* 1 :7–4, and transferred the cause to the Appellate Division pursuant to *R. R.* 1 :27D(a) (b). Prior to argument there, this Court certified the case on its own motion. *R. R.* 1 :10–1.

Since no testimony was heard by the trial court, the parties entered into the following stipulation of facts in lieu of record. See *R. R.* 1 :6–2; *R. R.* 2 :6 :

"1. On March 20, 1967, the Senate of New Jersey acted favorably on a bill which was introduced in the Senate (S.15) and which was subsequently passed upon favorably by the Assembly and signed by Governor Richard J. Hughes as *L.* 1967, *c.* 92 § 1, otherwise known generally and hereinafter referred to as the 'Milk Dating Law,' codified as *N. J. S. A.* 24:10–57.23.

2. On March 20, 1967, Senator Sido L. Ridolfi was the President of the Senate of New Jersey.

3. At the time the Senate acted favorably on the bill which became the Milk Dating Law, the functions, powers, duties and emoluments of the office of Governor develved upon Senator Sido L. Ridolfi as President of the Senate, pursuant to Article 5, Section 1, Paragraph 7, New Jersey Constitution of 1947.

4. The bill which became the Milk Dating Law received affirmative votes from 15 Senators, the minimum number of favorable votes required by the rules governing the Senate on March 20, 1967. Included in the 15 affirmative votes was an affirmative vote case by Senator Sido L. Ridolfi."

Plaintiffs argue that:

I. *The casting of a decisive legislative vote by the President of the New Jersey Senate at a time when he had assumed the powers and duties of the Governor by virtue of Art. V, § 1, par. 6 and par. 7, of the 1947 New Jersey Constitution, contravenes the doctrine of separation of powers guaranteed by Art. III of that Constitution.*

II. *The exercise of legislative power by the President of the Senate while he is acting Governor of the State constitutes the holding of incompatible public offices which is proscribed by the common law.*

74

I

*Art.* V, § 1, *par.* 6 and *Art.* V, § 1, *par.* 7 of the 1947 *Constitution* provide:

"In the event of a vacancy in the office of Governor resulting from the death, resignation or removal of a Governor in office, or the death of a Governor-elect, or from any other cause, the functions, powers, duties and emoluments of the office shall devolve upon the President of the Senate, for the time being; * * * until a new Governor shall be elected and qualify." (*Art.* V, § 1, *par.* 6)

"In the event of the failure of the Governor-elect to qualify, or of the absence from the State of a Governor in office, or his inability to discharge the duties of his office, or his impeachment, the functions, powers, duties and emoluments of the office shall devolve upon the President of the Senate, for the time being; * * * until the Governor-elect shall qualify, or the Governor in office shall return to the State, or shall no longer be unable to discharge the duties of the office, or shall be acquitted, as the case may be, or until a new Governor shall be elected and qualify." (*Art.* V, § 1, *par.* 7).

The separation of powers clause, *Art.* III, reads:

"The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."

Plaintiffs contend that the reading of the two first paragraphs in the light of the third paragraph results in the conclusion that the President of the Senate may not participate in legislative matters while he is Acting Governor.

█ The answer to that argument is to be found in *Clifford v. Heller,* 63 *N. J. L.* 105 (*Sup. Ct.* 1899). There, it was held that *Article 5, Clause 12* of the 1844 *Constitution* (which is similar to *Art.* V, § 1, *pars.* 6 and 7 of the 1947 *Constitution*) read together with *Article 3* of the 1844 *Constitution* (which is almost identical with *Art.* III of the 1947 *Constitution*), does not require that when the President of the Senate becomes Acting Governor he may no longer function as a Senator. Indeed, the court there said at *p.* 114:

"Will it be seriously contended that when the governor goes out of the state the president of the senate becomes governor until the duly-elected governor returns, and thereby vacates and loses his office as senator? That such an interpretation of this language would be adopted could not have been within the contemplation of the able men who incorporated it in this clause relating to a matter of supreme importance.

If it is the true construction, then when the senate was composed of ten members of one party and eleven of the other the governor of the state, by the simple device of passing into an adjoining state, could have vacated the seat of one senator and thus have deprived the opposing party of a majority in that branch of the legislature."

The reasoning and conclusions of *Clifford* are equally applicable to the pertinent sections of the 1947 *Constitution.*

Additionally, we find nothing in the minutes of the proceedings of the 1947 Constitutional Convention which suggests a contrary result. The only portion of the convention history which might be applicable is to be discovered in a report of the Legislative Committee which reads:

"The Committee voted that it recommend to the Committee on the Executive, Militia and Civil Officers that it insert a provision in the Executive Article prohibiting a legislative officer who becomes Acting Governor from exercising his legislative functions while so acting." III *Proceedings of the Constitutional Convention* 654–655.

No further discussion of that subject is revealed. It is logical to conclude that the failure to take further action on the proposal amounted to an acceptance of *Clifford.* We therefore find plaintiffs' argument without merit.

## II

The answer to plaintiffs' argument that the exercise of legislative power by the President of the Senate while he is Acting Governor constitutes the holding of incompatible offices, is the inapplicability of the common law to the problem with which we are here confronted. The Constitution supersedes the common law. Accordingly where, as here, the Constitution permits the holding of two offices otherwise in-

compatible under the common law, it overrides the common law.

 The Law Division properly determined that it lacked jurisdiction of the first count. Treating that count as an application to have the "Milk Dating Law" adjudged void, see *N. J. S. A.* 1 :7–1, 4, we hereby deny it and remand to the Law Division for disposition of the balance of the complaint.

*For denial and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.